IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2017 MAR 10  PM 4: 14

DEPUTY CLERK_____

| | | |
|---|---|---|
| TIM C. BARLOW, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:15-CV-0180 |
| | § | |
| NANCY A. BERRYHILL, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

### REPORT AND RECOMMENDATION
### TO AFFIRM THE DECISION OF THE COMMISSIONER

Plaintiff TIM C. BARLOW brings this cause of action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision of defendant NANCY A. BERRYHILL, Acting Commissioner of Social Security (Commissioner), denying plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3). For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be AFFIRMED.

### I.
### PROCEEDINGS

On June 24, 2013, plaintiff TIM C. BARLOW applied for DIB and SSI alleging a disability onset date of January 1, 2010. (Tr. 14, 37, 73, 85, 182, 184, 265). Plaintiff asserts his disabling

SS\R&R\Barlow-180.AFFIRM:1

conditions include borderline personality disorder, hepatitis C, neck and back problems, anxiety and asthma. (Tr. 205, 227, 265-266). The Commissioner denied benefits initially on November 12, 2013 and upon reconsideration on January 16, 2014. (Tr. 133–38, 141–44). Plaintiff elected to have an administrative hearing and, on July 18, 2014, a video hearing was held before an Administrative Law Judge (ALJ). (Tr. 33-72, 147, 154).

Plaintiff was born November 8, 1959 and was 51 years old at the onset of his alleged disability. (Tr. 36). He obtained his high school equivalency degree (GED) in 1976 and after two years of specialized training, received his license as a vocational nurse. (Tr. 37, 206, 265). Plaintiff has a past relevant work history which includes work as a warehouseman, work in the restaurant and retail industries and work as a nurse's aide and charge nurse. (Tr. 50-51, 206, 265). On November 13, 2014, the ALJ rendered an unfavorable decision, finding plaintiff not disabled and not entitled to benefits at any time relevant to the decision. (Tr. 11–31). Following the ALJ's unfavorable decision, plaintiff sought federal judicial review.

In reaching his decision of not disabled, the ALJ followed the five-step sequential process in 20 C.F.R. §§ 404.1520(a) and 416.920(a). At Step One, the ALJ determined plaintiff had not engaged in substantial gainful activity (SGA) since his alleged onset date of January 1, 2010. (Tr. 16). At Step Two, the ALJ found plaintiff's impairments of neck and back pain, asthma, dysthymia, pain disorder and personality disorder to be severe, but found plaintiff's hepatitis C condition to be a non-severe impairment. (Tr. 16-17). At Step Three, the ALJ concluded plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically finding that plaintiff did not meet or medically equal the criteria in listings 12.04 and 12.08. (*Id.*).

After an extensive review of the medical record the ALJ determined plaintiff was not entirely credible regarding his impairments and their impact on his ability to work. The ALJ then concluded plaintiff retained the residual functional capacity (RFC) to occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, to stand and/or walk at least 6 hours in an 8-hour workday and to sit at least 6 hours in an 8-hour workday. (Tr. 18-25). The ALJ further found plaintiff should avoid concentrated exposure to things such as odors, fumes and dust, was limited to simple, repetitive tasks, could relate to supervisors and coworkers only superficially, and could not work with the general public. (*Id.*).

At Step Four, the ALJ found plaintiff could return to his past relevant work as a warehouse worker, a job the ALJ classified as medium, unskilled and not requiring the performance of work-related activities precluded by plaintiff's RFC. (Tr. 25). Alternatively, at Step Five, based on the RFC determination and vocational expert (VE) testimony, the ALJ found plaintiff was capable of performing other jobs existing in significant numbers in the national economy including dishwasher and hand packager. (*Id.*). The ALJ found plaintiff was not under a disability at any time between January 1, 2010, the alleged onset date, and November 13, 2014, the date of the ALJ decision. (*Id.*).

## II.
## STANDARD OF REVIEW

The Court's role in reviewing disability determinations by the Commissioner is limited. The sole question is whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings, and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion. While it is more than a mere scintilla, it is

less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). To determine whether substantial evidence of disability exists, the following elements must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. The fact that the ALJ *could* have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ's decision.

III.

ISSUES

The ALJ found plaintiff not disabled at Step Four and alternatively found him not disabled at Step Five of the five-step sequential analysis. Consequently, the court's review is limited to whether there was substantial evidence in the record, taken as a whole, to support the finding that plaintiff had the ability to return to his past work as a warehouse worker and/or to perform other work that exists in significant numbers in the regional and national economies, and whether proper

legal standards were applied in making this determination.  Plaintiff presents the following issues for review:

> 1.  Whether the ALJ and Appeals Council failed to properly consider the opinions and evidence contained in the medical records of plaintiff's treating physicians;
>
> 2.  Whether the ALJ and Appeals Council gave unreasonable weight to the opinions of non-treating physicians who never consulted with plaintiff;
>
> 3.  Whether the ALJ and Appeals Council failed to properly apply the disability standards that would have resulted, if correctly applied, in a decision of disability;
>
> 4.  Whether the decision of the ALJ and Appeals Council was supported by substantial evidence; and
>
> 5.  Whether the plaintiff's due process rights were violated by the ALJ's failure to conduct a fair and complete hearing.

(Pl.'s Br. at 1-2).

IV.
MERITS

*A. ALJ's Treatment of the Medical Evidence from Plaintiff's Treating Physicians*

By his first issue, plaintiff challenges whether the ALJ properly considered the opinions and evidence of plaintiff's treating physicians.  Under SSA regulations, the ALJ will always consider medical opinions, *i.e.*, statements from physicians that reflect judgments about the nature and severity of the claimant's impairments,[1] together with the rest of the relevant evidence received.  20 C.F. R. § 1527(a)(2), (b) (2012).  If any of the evidence, including any medical opinions, is inconsistent with other evidence or is internally inconsistent, the ALJ will weigh all of the evidence.

---

[1]Including the claimant's symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and the claimant's physical restrictions.

20 C.F.R. § 1527 (c) (2012). Every medical opinion received is evaluated. 20 C.F.R. § 1527(d) (2012). The medical opinion of a *treating* source[2] will be given "controlling weight" if it is well-supported by the medical evidence <u>and</u> if it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). When a treating source's opinion is not given "controlling weight," an ALJ will consider the following factors in deciding what weight to give to the treating source's opinion: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the extent to which the opinion is supported by other evidence, (4) the consistency of the opinion with the record as a whole, (5) the doctor's specialization, and (6) other relevant factors. *Id.* The ALJ must give specific, "good reasons" in his decision for the weight given to a treating source's opinion, and the reasons must be supported by the evidence in the case record. *Id.*; SSR 96-2p, 1996 WL 374188 at *4-5. An ALJ may give "little or no weight" to a treating physician's opinion "when good cause is shown." *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). Good cause for rejecting a medical opinion is shown when the treating physician's evidence is (1) conclusory, (2) unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or (3) is otherwise unsupported by the evidence. *Id.* A treating physician's opinions are not conclusive, and the ALJ may "reject the opinion of any physician when the evidence supports a contrary conclusion." *Id.* at 455.

Here plaintiff argues the ALJ made <u>no mention</u> of the limitations noted by Dr. Murali Veeramachaneni and Dr. Alex Natividad in their comments, prognoses and GAF scores. Plaintiff argues this failure was error which was not harmless in that it resulted in a far less restrictive RFC

---

[2] A treating source is defined as the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. §§ 404.1502, 416.902. A treating source is the medical source most likely to be able to provide a detailed, longitudinal picture of the claimant's medical impairments.

than the record supports. (Dkt. 14 at 8). Plaintiff refers to his April 11, 2014 visitation with Dr. Alex Natividad, during an inpatient stay, and states he was noted to exhibit a dysphoric mood with a diagnoses of depressive disorder, borderline personality disorder, poor coping skills, poor self-esteem and a Global Assessment of Functioning (GAF) of 50. (Dkt. 14 at 7-8). Plaintiff refers to a visit to a local emergency department on April 29, 2014 where he consulted with Dr. Murali Veeramachaneni. Plaintiff was observed by medical staff to be disorganized and delusional and upon mental status exam, the doctor noted plaintiff's attention and concentration were poor, his mood was irritable and his affect was blunted. (Dkt. 14 at 8). The doctor diagnosed plaintiff with bipolar disorder and a GAF of 40. (Id.).

The administrative record contains a seven-page summary of the medical record evidence by the ALJ summarizing the examinations and treatments plaintiff received for his mental and physical impairments. (Tr.19–25). In the part of the ALJ's summary regarding the mental aspects of plaintiff's claims, he noted plaintiff's hospitalization from May 25, 2011 to May 31, 2011 for major depression, borderline personality disorder and polysubstance abuse. (Tr. 23). The ALJ's opinion indicated plaintiff was monitored for detox, but was not placed on medication because his symptoms appeared to be related to substance abuse, and that plaintiff was referred to Alcoholics Anonymous and Narcotics Anonymous and was discharged with a GAF of 70. (Id.). The ALJ's opinion referenced specific medical records from Northwest Texas Healthcare System in Exhibit 9F. (Tr. 357-364). The attending physician in those medical records was Dr. Murali Veeramachaneni. (Id.). The ALJ next referenced records found at Exhibits 2F, 4F and 10F of the hearing record. (Tr. 297-305, 311-327, 365-370). The ALJ noted plaintiff was hospitalized on September 13, 2012 with suicidal ideations and possible drug overdose with alcohol intoxication,

but that plaintiff had no suicidal ideation after admission. (Tr. 23). The ALJ noted plaintiff was released September 14, 2012 with the diagnosis of depressive disorder, amphetamine abuse and borderline personality disorder, that he made good eye contact, had normal speech, denied any suicidal or homicidal ideations at the time of his release, that he was not psychotic and his memory was not impaired at that time. (*Id.*). Exhibit 2F contains the medical records of Dr. Kishore Yalamanchili which reference the prior records completed by Dr. Veeramachaneni. (Tr. 297-305). Dr. Natividad is listed as the attending physician in Exhibit 10F which relates to plaintiff's inpatient treatment September 13, 2012 through September 14, 2012 and the same record is contained in Exhibit 4F which was a referral signed by Dr. Sultana Akhter on September 27, 2012. (Tr. 311-327, 365-370). The ALJ also referred to Exhibits 11F, 12F and 18F and stated, "The claimant was again hospitalized from April 10, 2014 through April 14, 2014 for depressive disorder, alcohol intoxication and borderline personality disorder. The past medical history revealed hepatitis C and HIV according to the records. Toxicology report was positive for benzodiazepines. The claimant was discharged with the diagnoses of depressive disorder, not otherwise specified, alcohol intoxication, borderline personality disorder primary diagnosis, history of HIV positive, and hepatitis C. His GAF score was 80 at time of discharge." (Tr. 23). Exhibits 11F and 12F are from The Pavillion Hospital and are identical medical records showing treatment and diagnoses of plaintiff by the attending physician Dr. Natividad with consultations for medical management by Dr. Muhammad Altaki and Dr. Harold Werner. (Tr. 371-380, 381-390). Exhibit 18F is also a record from The Pavillion Hospital by the attending physician Dr. Natividad with a consultation by Dr. Harold Werner. (Tr. 454-466). Finally, the ALJ references plaintiff's medical records contained in hearing Exhibits 13F and 19F where plaintiff's mental health was treated on an inpatient basis. (Tr. 23). Exhibits 13F and

19F are from The Pavillion Hospital and list Dr. Murali Veeramachaneni as the attending physician with consultations for medical management by Dr. Muhammad Altaki and Dr. Harold Werner. (Tr. 391-402, 469-480).

The medical records summarized by the ALJ include the treatment by Dr. Veeramachaneni and Dr. Natividad. As argued by defendant, neither of these doctor's records impose specific limitations resulting from plaintiff's mental health issues. (Dkt. 15 at 9-10). Further, the records reflect that once plaintiff was given medications appropriate for his condition his mood was stabilized "very well" and he was discharged. (Tr. 396).

While the ALJ may not have considered the medical findings by these two physicians in the light plaintiff contends they could have been considered, the ALJ opinion does show he properly considered the opinions and diagnoses of both treating doctors noting upon discharge from their care the physicians rated plaintiff's GAF scores in a range from 70-80. (Tr. 24). Further, as set forth by defendant, the GAF score is not determinative of an ability to work. The GAF score is a tool for clinicians making treatment decisions not for ALJ's making disability determinations. (Dkt. 15 at 11 citing *DSM-IV*, 32). The ultimate responsibility to make a determination of disability lies with the ALJ. *Newton* 209 F. 3d at 455. While the ALJ stated he gave great weight to the opinions of consultative examiners and medical consultants (Tr. 24) it cannot be said, as plaintiff argues, that he gave no weight to plaintiff's medical records and treating physician opinions. In fact, the ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. However, because plaintiff's treating physicians did not set forth any limitations based upon his medical conditions, the ALJ relied on consultative evaluations to understand the nature and scope of plaintiff's impairments and their potential impact on his ability to perform work-

related tasks. (Tr. 19). Plaintiff's argument the ALJ failed to properly consider the opinions and evidence of plaintiff's treating physicians is without merit and should be denied.

### B. ALJ's Treatment of the Opinions of Non-Treating Physicians

Plaintiff next claims the ALJ gave unreasonable weight to the opinions of non-treating physicians who never consulted with plaintiff. Plaintiff refers to the opinion of, "non-examining State Agency psychological consultants (sic plural), Nancy Childs, M.C. (sic M.D.), who found the plaintiff had the residual functional capacity for the medium level of exertion, with additional nonexertional limitations." (Dkt. 14 at 9).[3] Dr. Childs found plaintiff was partially credible and had exertional limitations which included the ability to occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk about six (6) hours in an 8-hour work day, sit for a total of about six (6) hours in an 8-hour work day and had the unlimited ability to push and/or pull (other than as shown for the lift and/or carry limitations). (Tr. 92).

Plaintiff argues Dr. Childs's finding goes against the medical evidence from his treating physicians who found plaintiff to suffer from chronic neck and lower back pain with disc spurs, disc space narrowing and significant arthropathy (a disease of the joint) bilaterally with canal and foraminal stenosis, displayed as severe tenderness to palpitation, limited range of motion and decreased muscle strength in the left ankle. (Dkt. 14 at 9). Defendant argues plaintiff refers to a magnetic resonance imaging (MRI) of his spine taken July 8, 2014 as support. (Tr. 535-538). Defendant notes even though the MRI was dated after the November 6, 2013 opinion of Dr. Childs, it was considered and weighed by the ALJ who found it to be non-persuasive because it showed, "no canal stenosis...no evidence of myelopathic change or other evidence of cervical

---

[3]Dr. Childs completed a physical RFC not a mental RFC and she is not a psychological but medical consultant. (Tr. 91-93).

cord pathology...there was no vertebral fracture or evidence of vertebral malalignment." (Tr. 23

citing Tr. 535-538).  The ALJ further found the MRI results did not preclude an ability to

perform medium level work.  (Tr. 25).

> Plaintiff's also refers to two consultants, Drs. Reddy and Durfor and states,
>
> Leela Reddy, M.D., non-examining, non-treating, DDS medical consultant, found
> Plaintiff had at least moderate degree of limitation on the claimant's activities of
> daily living; moderate degree of limitation in maintaining social functioning,
> moderate degree of limitation maintaining concentration, persistence or pace; or
> result in one or more episodes of decompensation of extended durations.  On
> January 13, 2014, John Durfor, M.D., another medical consultant, concurred with
> the previous assessment.  Both of these non-examining, non-treating, DDS
> medical consultants found Plaintiff more restricted than the ALJ, yet the ALJ gave
> their opinions great weight.

(Dkt. 14 at 9-10).  As explained by defendant, the ALJ concurred with the findings of Dr. Reddy

which included moderate restrictions of activities of daily living, moderate difficulties in

maintaining social functioning, concentration, persistence or pace, and no repeated episodes of

decompensation.  (Dkt. 15 at 15 citing Tr. 17, 119).  Dr. Durfor's January 13, 2014 findings

concurred with Dr. Childs that plaintiff could perform medium work and the ALJ agreed.  (Tr.

18, 108-109).  To the extent plaintiff argues Drs. Reddy and Durfor found him to be more

restricted than the ALJ, such argument is not supported by the record.

In his opinion, the ALJ admitted he gave, "great weight to the opinions of the consultative

examiners (Exhibits 3F, 5F and 6F) and medical consultants (Exhibits 1A, 2A, 7A and 8A) of the

State Disability Determination Services (DDS)..." (Tr. 24).  As argued by defendant, the ALJ is

entitled to determine the credibility of the medical experts and weigh their opinions accordingly.

*Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (saying a treating physician's opinions

"are far from conclusive").  Additionally, under the Social Security regulations, an ALJ is

required to consider State Agency physician opinions because these State Agency physicians are experts in Social Security disability evaluation. (*See* 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i), Tr. 24-25).

The ALJ's seven-page summary of the medical record evidence summarizes the examinations and treatments plaintiff received for his mental and physical impairments as well as the records of treating and non-treating, or consultative, doctors. (Tr.19–25). For example, an October 26, 2013 consultative internal examination by Jesse Dickens, M.D., considered by the ALJ, revealed plaintiff had 5/5 muscle strength testing, a steady gait with no assistive device, the ability to heel/toe walk with no problem and a normal sensory exam and showed plaintiff himself stated he had no pain upon examination and that his pain was usually a 2 on a scale of 1 to 10. (Dkt. 15 at 14 citing Tr. 20, 328-333). The ALJ also referred to plaintiff's visit to the emergency room on June 17, 2014 for complaints of back pain with some tenderness upon palpitation, but noted the examination revealed normal range of motion and normal alignment. (Dkt. 15 at 14 citing Tr. 22, 498-499).

The ALJ found that the plaintiff testified his neck and back pain make it difficult to work but that when he presented on several occasions to the Wyatt Community Clinic for follow up, he made no mention of neck or back pain. (Tr. 24). Additionally, the ALJ noted that plaintiff described daily activities that are not limited to the extent one would expect given the complaints of disabling symptoms. (Tr. 21). Throughout the record, whether in plaintiff's application and appeal documents, his medical records, or his testimony, there is evidence plaintiff could care for his own personal needs, could help with household chores, could mow the yard, could go shopping, watch tv, prepare meals, do laundry, and could walk up to one half mile. (Tr. 21).

While the ALJ stated he gave great weight to the opinions of the consultative examiners and medical consultants it cannot be said he did so to the detriment of the other objective evidence of record.  While an ALJ may, upon a showing of good cause, reject a treating physician's opinion, such is not the case here.  *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000).  The ALJ did not reject plaintiff's treating physicians' findings but instead utilized agency consultative experts, who are experts in Social Security disability evaluation, to determine the impact of plaintiff's impairments on his ability to perform work-related tasks.  (Tr. 19).  Plaintiff has not shown reversible error.

### C. *Plaintiff's Remaining Claims*

Plaintiff asserts as his remaining claims the issues of 1) whether the ALJ and Appeals Council failed to properly apply the disability standards that would have resulted, if correctly applied, in a decision of disability; 2) whether the decision of the ALJ and Appeals Council was supported by substantial evidence; and 3) whether the plaintiff's due process rights were violated by the ALJ's failure to conduct a fair and complete hearing.  As to the first two issues, whether the disability standards were properly applied and whether there was substantial evidence, the Court cannot find in plaintiff's favor.  Evaluating the objective medical facts, diagnoses and opinions of treating and consulting physicians, plaintiff's subjective evidence of pain and disability, and plaintiff's age, education, and work history, the Court concludes substantial evidence, as that term is defined, supports the Commissioner's determination.  *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).  The ALJ decision summarizes the medical evidence of record as a whole and makes a finding based upon this substantial evidence.  (Tr. 14-31).  Further, the ALJ sets forth the standards of disability as he is required to do and recites his application of

those standards. (*Id.*). Plaintiff's arguments regarding these issues do not establish reversible error.

As to the issue of whether a fair and complete hearing was conducted, plaintiff makes the following argument:

> At page 70-71 of the record it appears that the cross-examination of the vocational expert was terminated by the ALJ, despite the request that additional cross-examination be permitted. This cross-examination would have purportedly revealed "numerous inconsistencies in vocational testimony." (TR-71). This is certainly not the due process a hearing before an ALJ is meant to entail. This, in fact, flies in the very face of a full and fair hearing on the merits of the case and as such is error which requires reversal, or at the very least remand to the ALJ for a full and fair hearing.

(Dkt. 14 at 10). At the hearing, the ALJ questioned the vocational expert (VE) about jobs existing in the local and national economies which could be performed based upon a hypothetical RFC the same as that of plaintiff. (Tr. 57-60). The RFC hypothetical included a person the same age as plaintiff, limited to medium level work and who had to avoid concentrated exposure to odors, fumes and dust. (Tr. 57). The person was also limited to simple, repetitive tasks and could only relate to supervisors or coworkers superficially. (Tr. 58-59). The VE testified such an individual could perform plaintiff's past work as a warehouse worker. (Tr. 59). The VE also testified that medium level, unskilled jobs existed in the local and national economies such a person could perform including hand packager and dishwasher. (Tr. 60).

At the hearing plaintiff's attorney had an opportunity to cross-examine the VE. (Tr. 60-69). During such cross-examination counsel elicited testimony from the VE that she utilized a software she referred to as "Job Browser Pro, SkillTRAN." (Tr. 69). Specifically, the VE testified she utilized this software to make associations between the Dictionary of Occupational Titles (DOT) and the Occupational Employment Statistics which she agreed do not refer to

specific jobs by DOT title. (Tr. 68).[4]  When counsel began to inquire how the software company compiled and analyzed its data he was stopped by the ALJ. (Tr. 70).  Counsel objected and submitted continued cross-examination would reveal, "numerous inconsistencies in vocational testimony which must result pursuant to SSR-004P as well as an unreliable methodology employed in arriving at regional and national numbers." (Tr. 71).  Upon request, the ALJ agreed to hold the record open for thirty days to give counsel an opportunity to, "prepare briefing on the testimony of the vocational expert." (*Id.*).  While counsel did, after the ALJ decision, file a post-hearing brief to the Appeals Council on February 12, 2015, he did not address this specific issue. (Tr. 271-273).

To the extent plaintiff now re-urges a claim of unreliable methodology, his claim fails. Even assuming, for argument's sake, the ALJ erred in stopping the cross-examination thus denying plaintiff the opportunity to develop his assertion that the vocational numbers presented by the VE were flawed, and even assuming plaintiff did not waive the issue by failing to address it in his post-hearing brief before the Appeals Council, plaintiff has failed to present this Court with evidence of what the prohibited cross-examination would have been or how the VE's vocational numbers were flawed or would have differed or been reduced below the substantial threshold required in social security law.  For these reasons plaintiff's remaining claims are without merit and should be denied.

## V.
## RECOMMENDATION

For the reasons set forth above, it is the opinion and recommendation of the undersigned

---

[4] According to the Bureau of Labor Statistics website, http://www.bls.gov/oes, the Occupational Employment Statistics produces employment and wage estimates annually for over 800 occupations.

to the United States District Judge that the decision of the Commissioner finding plaintiff TIM C.

BARLOW is not disabled and not entitled to disability benefits be AFFIRMED.

VI.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this _____ /0th_____ day of March 2017.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

**\* NOTICE OF RIGHT TO OBJECT \***

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. Petitioner. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).